UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:10CV-00064-JHM

**LORI RENEE WRIGHT**                                                                         **PLAINTIFF**

**V.**

**MICHAEL ASTRUE, Commissioner of Social Security**                    **DEFENDANT**

## MAGISTRATE JUDGE'S REPORT and RECOMMENDATION

This matter is before the Court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Bradley Rhoads. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 15, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on August 19, 2009, by administrative law judge (ALJ) Phylis Pierce. In support of his decision denying Title II and Title XVI benefits, Judge Pierce entered the following numbered findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since January 1, 2005, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for limited interaction with the public and/or co-workers and no work environments that are noisy, distracting, fast-paced, and confusing.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 16, 1967, and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 13-22).

## Governing Legal Standards

1. The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the Court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the Court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A severe impairment is one that "significantly limits" a claimant's ability to do "basic work activities [that are] necessary to do most jobs [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is deemed to be non-severe. *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is severe, and the sequential evaluation should proceed to Step #3. Nevertheless, the severity step can and should continue to function as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Secretary*, 880 F.2d 860, 863 (1988). In addition, the severe impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past

relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## **Mental Impairments**

The following constitutes a chronological summary of certain evidence relevant to an understanding of the plaintiff's mental impairments:

1. On January 30, 2008, counsel took a statement from the plaintiff's treating clinical psychologist at River Valley Behavioral Health, Holly Ludwig, Psy.D. Dr. Ludwig testified that the plaintiff suffers from the following (AR, pp. 677-679):

> "Marked" restriction in social functioning, interacting with co-workers, supervisors, and the public.
> "Marked" restriction in regard to concentration.
> "Extreme" restriction in activities of daily living.
> "Difficult" for her to handle normal work-like stresses.
> "Difficult" for her to make normal work-related judgments.
> "Difficult" for her to focus and concentrate.

2. At the administrative hearing on June 11, 2009, the medical expert, Tom Wagner, Ph.D., testified that the plaintiff has the same mental limitations memorialized in his contemporaneous completion of the standard mental assessment form (AR, pp. 44 and 809-810). Dr. Wagner opined as follows:

> "Marked" restriction in carrying out detailed instructions.
> "Moderate" restriction in understanding and remembering detailed instructions.
> "Moderate" restriction in interacting appropriately with the public.
> "Moderate" restriction in interacting appropriately with co-workers.

"Moderate" restriction in responding appropriately to work pressures in a usual work setting.
"Moderate" restriction responding appropriately to changes in a routine work setting.
"Slight" restriction in the remaining functional areas.
"Limited" capacity for stress tolerance resulting in a need to avoid work environments that are noisy, distracting, fast-paced, or confusing.

3. The vocational expert (VE) testified as follows (AR, pp. 50-52):

a. The plaintiff is limited to "simple, unskilled work" based on Dr. Wagner's findings.

b. The plaintiff's prior work experience as a waitress/server at Ruby Tuesday's, which did not rise to the level of substantial gainful activity (SGA), was "light ... semi-skilled, SVP of 3."

c. An individual who is restricted to "light" work and having the mental limitations found by Dr. Wagner would be unable to perform the plaintiff's past jobs.

d. However, the individual could perform a significant number of other jobs in the national economy, which the VE characterized as "unskilled, not quota based, fairly isolated, low stress work, such as housekeeping jobs where people might come in and clean an office after hours, et cetera."

e. There are also some "sedentary, unskilled, fairly isolated jobs" that are compatible with Dr. Wagner's findings, for example, escort vehicle driver and surveillance system monitor.

4. Dr. Wagner discounted Dr. Ludwig's finding of "marked in social functioning, concentration" because "what I did not have is the consistency across the note taking where it lasted for any length of time" (AR, p. 48).

5. On June 30, 2009, after the administrative hearing, counsel again deposed Dr. Ludwig. Dr. Ludwig stated that, if anything, the plaintiff's condition has deteriorated since she gave her prior statement on January 30, 2008, and that the plaintiff continues to have "marked" restriction in being around people and concentrating (AR, pp. 830-832). When counsel questioned Dr. Ludwig with

6

respect to Dr. Wagner's discounting of her finding of "marked" limitations in these areas at the hearing on the ground that her treatment notes allegedly are not "consistent" with her opinions, Dr. Ludwig stated that she was "frustrated with that" because she has been treating the plaintiff since 2004, she is "very familiar" with the plaintiff, she simply cannot write down on the "three lines" provided the wealth of clinical detail that Dr. Wagner apparently demands, "I don't necessarily try to document her entire history on each note," etc.

### The ALJ's Weighing of Dr. Ludwig's Opinions

In her written decision, the ALJ identified four reasons for giving Dr. Ludwig's opinions "little weight" and those of Dr. Wagner the "greatest weight" (AR, p. 20). The ALJ repeatedly stated that she discounted Dr. Ludwig's finding of "marked" difficulties in social functioning in light of the plaintiff's prior work experience at Ruby Tuesday's, to-wit (AR, pp. 13, 16, and 20):

> [1] The claimant worked after the alleged disability onset date, but this work activity did not rise to the level of substantial gainful activity. The claimant testified she worked as a server/waitress approximately 20-30 hours per week in 2005 and 2006. It may be, as well, that her earnings are under-reported considering that she received tips in addition to wages from her employer. While this work activity did not constitute substantial gainful activity as defined by the regulations, it does indicate an ability to engage in competitive work if motivated to do so.
> ...
> The undersigned also notes the claimant served as a waitress for approximately a year and a half after her alleged onset date, and the undersigned notes the type of contact with others needed to maintain this employment for this length of time. In this regard, the undersigned does not assess more than moderate difficulties in social functioning.
> ...
> In addition, her past relevant work and her work activity as a waitress since the alleged onset date also conflict with the type of limitations the claimant expresses.

The ALJ further found as follows (AR, pp. 19-20):

> [2] At the June 2009 hearing, Dr. Wagner, a highly qualified medical expert, indicated that Ms. Ludwig's statement was not consistent with the claimant's regular treatment notes at River Valley.

7

...
[3] Some weight has been given to the mental residual functional capacity [RFC] assessed by a State agency [psychological] consultant as of November 25, 2006 [which opined fewer restrictions than Dr. Ludwig], and the affirmation of that opinion by another State agency consultant on May 17, 2007.
...
[4] Ms. Ludwig's opinions that the claimant would have marked and extreme limitations is not consistent with the activities of the claimant. For example, the claimant testified she cares for her teenaged, twin daughters ....

## **The Plaintiff's Principal Contention**

The plaintiff's primary argument upon judicial review is that the ALJ did not give "good reasons" for assigning "little weight" to Dr. Ludwig's opinions. For the following reasons, the Magistrate Judge concludes that the four reasons identified by the ALJ, supra, are unpersuasive:

1. As noted above, the ALJ acknowledged that the plaintiff's prior work experience at Ruby Tuesday's did not rise to the level of SGA (AR, p. 13). In addition, even if had risen to the level of SGA, the VE testified that an individual with the limitations found by Dr. Wagner would be unable to perform it (AR, pp. 50-52). It appears unfair of the ALJ to rely upon work that the plaintiff can no longer perform in support of a finding that she does not suffer from the limitations identified by Dr. Ludwig. Admittedly, the VE excluded the Ruby Tuesday's job because it was semi-skilled as opposed to unskilled, leaving open the possibility that performance of the job was incompatible with the "marked" limitations in social functioning found by Dr. Ludwig. However, the plaintiff testified that, despite the fact that the people she worked with at Ruby Tuesday's were extremely accommodating and even "loving," she was eventually asked to leave because of frequent, uncontrolled crying spells (AR, p. 123). The Magistrate Judge concludes that the ALJ's reliance upon this work in support of a conclusion that the plaintiff does not have "marked" restriction in social functioning appears to be inextricably bound to her pre-existing conclusion that the plaintiff

8

is not properly "motivated" to work (AR, p. 13).

2. For the reasons explained by Dr. Ludwig herself after the administrative hearing and contrary to Dr. Wagner's testimony, there is nothing in her treatment notes that is genuinely "inconsistent" with her opinions (AR, pp. 677-679 and 830-832). In any event, a medical opinion of a treating source (e.g., Dr. Ludwig) is generally entitled to greater weight than that of a non-examining medical expert (e.g., Dr. Wagner). See rules for weighing medical opinions at 20 C.F.R. §§ 404.1527 and 416.927.

3. A medical opinion of a treating source (e.g., Dr. Ludwig) is generally entitled to greater weight than that of a non-examining program psychologist. Id.

4. The fact that the plaintiff does the best she can to care for her teenaged, twin daughters and engages in some daily activities does not undermine or contradict Dr. Ludwig's findings.

**Harmless Error**

Notwithstanding the foregoing plaintiff-favorable conclusions, we note in passing that for the following reasons, the ALJ's failure to give good reasons for assigning little weight to Dr. Ludwig's opinions may fairly be described as harmless error:

1. Both the ALJ in her written decision and the Commissioner in his fact and law summary treat Dr. Ludwig's opinions of "marked" limitations with respect to the plaintiff's social functioning and concentration as something that must be rejected in order to conclude that the plaintiff is not disabled. The sole dispute between the parties appears to be whether the ALJ identified "good reasons" for this rejection. We have concluded that she did not give "good reasons." Nevertheless, we observe that the opinions of Dr. Wagner and the ALJ's RFC findings appear to be consistent with those of Dr. Ludwig and, hence, do not necessarily need to be rejected to conclude

9

that the plaintiff is not disabled, to-wit:

a. Unlike Dr. Wagner, who completed a mental RFC form that defined the terms "marked" and "moderate," Dr. Ludwig merely responded to leading questions by counsel. Therefore, it is impossible to know exactly what Dr. Ludwig understood as a "marked" restriction with respect to the plaintiff's ability to interact with co-workers, supervisors, and the public. The VE identified jobs that he described as "fairly isolated" (AR, p. 51). Although it is reasonably clear that Dr. Ludwig did not believe that the plaintiff could handle the "social interaction" component of her prior jobs, there is no evidence that Dr. Ludwig also would have ruled out the jobs identified by the VE. The VE did not testify that acceptance of Dr. Ludwig's findings would eliminate those jobs.

b. Dr. Ludwig's finding that the plaintiff has "marked" restriction with respect to her ability to concentrate is consistent with Dr. Wagner's finding that she has a "marked" restriction in carrying out detailed instructions but only a "moderate" restriction in understanding and remembering detailed instructions.

2. Dr. Ludwig's finding that the plaintiff has "extreme" limitations with respect to her daily activities was not a genuine medical opinion. An individual's level of daily activities is judged by what she actually does, not what a medical source predicts she should be able to do based upon diagnoses and other clinical factors. As finder of fact, the ALJ was in a better position than Dr. Ludwig to determine the plaintiff's level of daily activities.

3. Dr. Ludwig's opinion that it would be "difficult" for the plaintiff to handle normal work-like stresses, make normal work-related judgments, and focus and concentrate is not of dispositive significance. The question is what the individual can, in fact, accomplish by way of work or work-like activities, not whether she would find it easy or difficult.

## Wilson v. Commissioner

The remaining question is whether we are authorized, as a matter of law, to give legal effect to our above conclusion that the ALJ's failure to give "good reasons" may fairly be described as "harmless error." The regulations provide that "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). In 2004, the Sixth Circuit decided the landmark case of *Wilson v. Commissioner*, 378 F.3d 541. *Wilson* is widely interpreted as holding that a failure to give "good reasons" is rarely harmless because, in addition to facilitating meaningful judicial review, the requirement of giving "good reasons" exists "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his [treating source] has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." Id. at p. 544.

We note in passing that *Wilson* did open the door to the possibility of a narrow class of harmless error, to-wit:

> That is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error. We do not decide the question of whether a <u>de minimis</u> violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. ... There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2) -- the provision of the procedural safeguard of reasons -- even though she has not complied with the terms of the regulation.

In *Nelson v. Commissioner*, 2006 WL 2472910, the Sixth Circuit expanded upon the above language from *Wilson*, holding that the ALJ's failure explicitly to state what weight he gave to the opinions

11

of the treating sources was a de minimis violation because "the ALJ's evaluation of Nelson's mental impairments indirectly attacks both the supportability of [the treating source] opinions and the consistency of those opinions with the rest of the record evidence." At first blush, in light of this seeming reinvigoration of the "harmless error" doctrine, we are tempted to conclude that Judge Pierce's failure to give good reasons for rejecting Dr. Ludwig's medical opinion, which is consistent with her own RFC determination, is a de minimis violation.

However, *Nelson* cautioned that "this is a rare case of the ALJ's analysis meeting the goal of the rule even if not meeting its letter." More recently, in *Coldiron v. Commissioner*, 2010 WL 3199693, the Sixth Circuit further cautioned that "Notably, courts look to the ALJ's decision itself, and not other evidence in the record, for this [*Nelson*-style] support." The substantial weight of the post-*Wilson* jurisprudence appears to militate in favor of a conclusion that this is not one of those rare cases in which the ALJ's decision satisfied the goal if not the letter of the notice-giving rule because, unlike the ALJ in *Nelson*, Judge Pierce explicitly rejected Dr. Ludwig's opinions, gave only unpersuasive reasons for finding that they lacked adequate support, and did not identify any inconsistent opinions from another treating or examining source. In plain language, we find nothing in the ALJ's decision itself that would have prevented the plaintiff or Dr. Ludwig from being bewildered and frustrated at the ALJ's rejection of Dr. Ludwig's opinions.

**The Treating Physician Opinions**

Next, the plaintiff argues that the ALJ failed to give "good reasons" for the weight she gave to the medical opinions of her treating physicians, to-wit, psychiatrist Tristen Briones, rheumatologist David True, neurosurgeon Herold Cannon, and gastroenterologist, Robert Kirk. As noted above in our discussion of Dr. Ludwig's opinions, we were tempted but ultimately declined

to conclude that Judge Pierce's failure to give good reasons for rejecting those opinions, which did not appear to be **inconsistent with the ALJ's RFC determination**, was a de minimis violation. Interestingly, the Commissioner's position with respect to the treating physicians is that "the ALJ did not reject their opinions, and Plaintiff fails to indicate how their medical opinions are **inconsistent with the ALJ's RFC determination** *(emphasis added)*" (Docket Entry No. 15, p. 10). We concur with the Commissioner on this point because, in stark contrast to the situation with Dr. Ludwig, we find no language in the ALJ's written decision indicating a rejection of any opinion of these physicians and no evidence in their treatment records opining any specific restriction. Under the circumstances, we find that the ALJ's failure to give "good reasons" for the weight she gave to the opinions of the treating physicians was, at worst, a de minimis violation.

## Credibility

Finally, we agree with the plaintiff that the ALJ's credibility assessment is flawed or, at least, uncomfortably suspect. As noted above, the ALJ repeatedly attempted to utilize the plaintiff's prior work experience at Ruby Tuesday's to discredit Dr. Ludwig's opinion and the plaintiff's testimony of marked inability to interact with co-workers, supervisors, and the public. According to the ALJ, this work indicated an "ability to engage in competitive work if motivated to do so" (AR, p. 13). We concluded that the ALJ's utilization of the plaintiff's job at Ruby Tuesday's was "unfair" in light of the fact that it did not rise to the level of SGA; based on the ALJ's own RFC determination, the VE testified that the plaintiff would be unable to perform it; and the plaintiff presented unrebutted testimony that she was eventually asked to quit due to frequent, uncontrolled crying spells.

In addition, on November 20, 2008, counsel took a statement from the treating gastroenterologist, Dr. Kirk (AR, pp. 750-751). Dr. Kirk stated that he had treated the plaintiff for

13

many years for a severe spastic colon / irritable bowel syndrome. He further stated that the plaintiff's anxiety disorder and panic attacks probably exacerbated the plaintiff's symptoms of abdominal pain, nausea, and variation in her bowel habit. Dr. Ludwig opined the reverse, i.e., that the irritable bowel syndrome exacerbated the plaintiff's mental impairments (AR, p. 678). While the ALJ did not deny this interconnection, she did state as follows in her written decision (AR, p. 15):

> [T]he undersigned does not find the evidence of record sufficient to indicate that the claimant's irritable bowel syndrome could not be controlled by diet and/or medication, and therefore would not independently place more than minimal limitations on basic work activities. Further, the claimant does not experience weight loss or anemia related to irritable bowel syndrome or any other gastrointestinal impairment.

There is no evidence that the plaintiff's irritable bowel syndrome can be controlled by diet and/or medication. Hence, we are troubled by the following subtle implication: If a) the plaintiff's irritable bowel syndrome can be or, in fact, is controlled to the extent it places no more than minimal limitations on basic work activities and, b) the plaintiff's mental impairments are interconnected with her physical impairments, there is no persuasive reason to believe that the plaintiff has any mental limitations at all. Yet Dr. Wagner and even the ALJ acknowledged significant mental restrictions. The Magistrate Judge concludes that a combination of unfair conclusions, passing references to lack of "motivation" to work lacking record support, and subtle implications bordering on "playing doctor" render the ALJ's credibility assessment unacceptable.

## **RECOMMENDATION**

The Magistrate Judge RECOMMENDS the final decision of the Commissioner be REVERSED and this matter be REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for a new decision and further administrative proceedings, without limitation and consistent with this report, evaluating the plaintiff's credibility and the physical and mental

14

limitations resulting from her impairments as a whole and giving "good reasons" for the weight given to the medical opinions of the plaintiff's treating clinical psychologist, Dr. Ludwig.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:      Counsel